UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SANTIAGO ESQUIVEL,

        Petitioner,                      Case No. 1:21-cv-290

v.                                         Honorable Paul L. Maloney

GARY MINIARD,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.     **Factual allegations**

Petitioner Santiago Esquivel is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan.  On May 30, 2018, following a five-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c, and one count of assault with intent to commit sexual penetration, in violation of Mich. Comp. Laws § 750.520g.  On July 16, 2018, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to concurrent prison terms of 29 years, 8 months to 59 years, 4 months on each CSC-I conviction, 10 years, 5 months to 22 years, 6 months on the CSC-II conviction, and 6 years, 11 months to 15 years on the assault conviction.

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution and the testimony elicited at trial as follows:

> This case arises from defendant's repeated sexual assaults of his girlfriend's minor child.  Defendant helped raised the victim from the time she was four years old.  He began sexually abusing her when she was 10 or 11 years old, and the abuse continued until the victim was 15 years old.  The assaults escalated from defendant penetrating the victim with his fingers while she was asleep to defendant attempting to penetrate the victim with his penis, kissing her, touching her breasts and thighs, forcing her to watch pornography, forcing her to touch his penis, and following her around the house to abuse her in various locations.  Defendant abused the victim in the kitchen, bathroom, living room, and bedrooms.  Defendant sometimes accosted the victim several times a day.  Defendant also manipulated and controlled the victim, making her feel that the abuse was her fault, and treating her differently than her siblings by buying her gifts, paying her special attention, not allowing her to leave the house, and acting like they were in a romantic relationship.
>
> During the trial, the victim's mother testified that she texted defendant and asked him if he had touched her daughter.  She testified that defendant did not deny touching her daughter, but responded by texting "WTF?" and "What do you want

2

> me to say?" She further testified that defendant's failure to deny the accusation made her think "that he did it."
>
> During the prosecutor's case-in-chief, a police detective testified on direct examination that he set up an interview with the victim after speaking with her mother to coordinate a date and time. After he interviewed the victim, the detective had contact with defendant, and then he obtained a search warrant for defendant's cell phone. Therefore, during the testimony elicited by the prosecutor, the detective made no mention of any attempt to interview defendant and made no reference to defendant invoking his right to counsel or to remain silent.
>
> A juror then submitted a question inquiring about the grounds on which police arrested defendant. In response to the juror's inquiry, the trial court questioned the detective about the victim's interview. The detective responded that, after he interviewed the victim, he believed he had probable cause to arrest defendant. The detective further responded that the prosecutor instructed him to arrest and interview defendant. Therefore, during the testimony elicited by the trial court, the detective stated that he received instructions to arrest and interview defendant, but he made no mention of an attempt to interview defendant or defendant invoking his right to counsel or to remain silent.
>
> Based on the detective's response to the trial court's questions, defendant moved for a mistrial, arguing that the detective's testimony violated his due-process rights by referring to his postarrest, post-Miranda silence. Defendant asserted that the detective revealed that the police intended to interview defendant. Coupled with the fact that no interview was presented to the jury, defendant argued that the detective's testimony created an implication that defendant either asserted his right to counsel or his right to remain silent. The trial court denied the motion for a mistrial, holding that the witness did not mention that defendant had invoked his right to counsel or to remain silent. The trial court concluded that there was nothing improper about the detective's testimony, and even if any error had occurred, it was harmless.

(Mich. Ct. App. Op., ECF No. 1-5, PageID.29–30.) "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016). Although Petitioner denies that the events described by the other witnesses occurred, his habeas challenges do not call into question the accuracy of the appellate court's description of the testimony.

The jury convicted Petitioner of the five offenses and the court sentenced Petitioner as described above. Petitioner, with the assistance of counsel, directly appealed his convictions

3

and sentences to the Michigan Court of Appeals, raising two issues: the same two issues he raises in his habeas petition. By unpublished opinion issued December 12, 2019, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.

Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court raising the same issues he raised in the court of appeals. By order entered May 26, 2020, the supreme court denied leave to appeal. (Mich. Order, ECF No. 1-6, PageID.36.)

On March 26, 2021, Petitioner timely filed his habeas corpus petition raising two grounds for relief, as follows:

> I. The trial court violated Petitioner's due process right to be free from punishment for exercising his Fifth Amendment right to remain silent. Petitioner is entitled to a new trial. US Const Ams X, XIV.
>
> II. The trial court violated Petitioner's due process right to be sentenced based on accurate information when it incorrectly scored OV 7 at 50 points and OV 10 at 15 points without sufficient support. Petitioner is entitled to resentencing. U.S. Const Ams. V, XIV.

(Pet., ECF No. 1, PageID.21, 25.)

**II.  AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim

4

lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

5

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Comment on Petitioner's silence

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that, in order to protect an individual's Fifth Amendment privilege against self-incrimination, when an individual is in custody, law enforcement officials must warn the suspect before his interrogation begins of his right to remain silent, that any statement may be used against him, and that he has the right to retained or appointed counsel. *Id.* at 478–79; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994). Even so, "the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good . . . . Admissions of guilt resulting from valid *Miranda* waivers are more than merely desirable; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Texas v. Cobb*, 532 U.S. 162, 172 (2001) (quotation and citation omitted).

Upon Petitioner's arrest, he was advised of his Miranda rights. Petitioner invoked his right to remain silent and his right to counsel.

The prosecutor may not comment on the silence of a detained person who has asserted his or her *Miranda* rights. In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the Supreme Court considered whether a defendant's silence during a custodial interrogation could be used, not as

7

evidence of guilt, but to impeach the defendant's testimony at trial. The Court held "that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." The theory underlying *Doyle* is that, while *Miranda* warnings contain no express assurance that silence will carry no penalty, "such assurance is implicit to any person who receives the warnings." *Id.* at 618. On this reasoning, the Court concluded that it would be fundamentally unfair first to induce a defendant to remain silent through *Miranda* warnings and then to penalize the defendant who relies on those warnings by allowing the defendant's silence to be used to impeach an exculpatory explanation offered at trial. *Id.*

Petitioner contends he has been the victim of such fundamental unfairness. He was arrested and invoked his Miranda right to remain silent. He contends that the detective's reference to the prosecutor's direction that the detective arrest and interview Petitioner was tantamount to informing the jury that an interview occurred and that Petitioner remained silent.

It is important to keep in mind that the only thing the detective said was that the prosecutor instructed the detective to arrest and interview Petitioner. The detective did not mention an attempt to interview Petitioner nor did the detective state or even suggest that Petitioner had invoked his *Miranda* rights. The oral argument for Petitioner's appeal is available from the Michigan Court of Appeals. *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=344832&CourtType_CaseNumber=2 (visited Apr. 2, 2021). During oral argument, the court of appeals judges confirmed with Petitioner's counsel that the only statement which Petitioner found objectionable was the detective stating that the prosecutor instructed the detective to arrest and interview the Petitioner.

The court of appeals resolved Petitioner's challenge as follows:

> In *People v Shafier*, 483 Mich 205, 224; 768 NW2d 305(2009), our Supreme Court held that the prosecutor violated the defendant's due-process rights when he referred to the defendant's postarrest, post-Miranda silence. In that case, however, the prosecutor made repeated references to the defendant's silence in his opening statement; in the presentation of the case-in-chief by eliciting testimony from the arresting officer; on cross-examination of the defendant; and in closing argument. The Supreme Court stated that the issue was that the state gave defendant Miranda warnings, "which constituted an implicit promise that his choice to remain silent would not be used against him," and then "breached that promise by attempting to use defendant's silence as evidence" against him. *Id*. at 218. The Court concluded that there was "no question that this is the sort of error that compromises the fairness, integrity, and truth-seeking function of a jury trial," rendering the trial fundamentally unfair. *Id*. at 224.
>
> In this case, unlike in *Shafier*, the allegedly improper comment by the police detective was not grounds for a mistrial. The prosecutor did not refer to defendant's postarrest, post-Miranda silence in his opening statement, in his case-in-chief, during cross-examination of any witness, or in his closing statement. In fact, the comment to which defendant objects was not elicited by the prosecutor's questioning at all. The trial court asked the detective, after a juror raised the question, about his interview of the victim. The detective responded that he believed he had probable cause to arrest defendant following the interview of the victim and that the prosecutor instructed him to arrest and interview defendant. No follow-up questions were asked, no further references were made to an interview, and no references were made to defendant's silence or lack thereof. In fact, the challenged testimony did not refer to defendant's silence at all. Furthermore, the testimony was not repeated; it was an isolated and inadvertent comment in response to a juror's question.
>
> On these facts, the trial court properly denied defendant's motion for a mistrial. The single reference to the detective's instructions to arrest and interview defendant did not amount to a reference to defendant's silence.

(Mich. Ct. App. Op., ECF No. 1-5, PageID.31.) Although the Michigan Court of Appeals decided Petitioner's claim based upon state court authority—*Shafier*—there is no question that *Shafier* was decided based on clearly established federal law. The *Shafier* court acknowledged that the Michigan constitution provided at least coextensive protections, but the court made clear it was applying the United States constitution, not the state constitution. *Shafier*, 768 N.W.2d at 309 n.6.

In *Shafier*, the Michigan Supreme Court was applying *Doyle* and *Wainwright v. Greenfield*, 474 U.S. 284 (1986):

The United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Am. V. *Miranda v. Arizona*, 384 US 436, 444–439, 467–468, 86 S Ct 1602, 16 L Ed 2d 694 (1966), established "guidelines for law enforcement agencies and courts to follow" in order to protect the privilege against compelled self-incrimination during custodial police interrogations. Thus, under *Miranda*, every person subject to interrogation while in police custody must be warned, among other things, that the person may choose to remain silent in response to police questioning. *Id*. at 444–445, 86 S Ct 1602. As a general rule, if a person remains silent after being arrested and given *Miranda* warnings, that silence may not be used as evidence against that person. *Wainwright v. Greenfield*, 474 US 284, 290–291, 106 S Ct 634, 88 L Ed 2d 623 (1986). Therefore, in general, prosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution. See *Wainwright*, 474 US at 290–291, 106 S Ct 634; *Doyle*, 426 US at 618–620, 96 S Ct 2240.

The United States Supreme Court has explained the rationales behind the constitutional prohibition against the use of a defendant's post-arrest, post-*Miranda* silence. To begin with, a defendant's silence may merely be the defendant's invocation of the right to remain silent, as opposed to a tacit acknowledgement of guilt. "[E]very post-arrest silence is insolubly ambiguous . . . ." *Doyle*, 426 US at 617, 96 S Ct 2240. Further, *Miranda* warnings provide an implicit promise that a defendant will not be punished for remaining silent. *Id*. at 618, 96 S Ct 2240. Once the government has assured a person of his right to remain silent, "breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires." *Wainwright*, 474 US at 291, 106 S Ct 634.

Consistent with these rationales, a defendant's post-arrest, post-*Miranda* silence cannot be used to impeach a defendant's exculpatory testimony, see *Doyle*, or as direct evidence of defendant's guilt in the prosecutor's case-in-chief, see *Wainwright*, 474 US at 292–294, 106 S Ct 634. "What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized." *Id*. at 295, 106 S Ct 634. There are limited exceptions to this general rule, but none applies here. This Court has adopted this understanding of a defendant's due process rights and stated that post-arrest, post-*Miranda* silence "may not be used substantively or for impeachment purposes since there is no way to know after the fact whether it was due to the exercise of constitutional rights or to guilty knowledge." *People v. McReavy*, 436 Mich 197, 218, 462 NW2d 1 (1990).

In general, any reference to a defendant's post-arrest, post-*Miranda* silence is prohibited, but in some circumstances a single reference to a defendant's silence may not amount to a violation of *Doyle* if the reference is so minimal that "silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . ." *Greer v. Miller*, 483 US 756, 764–765, 107 S Ct 3102, 97 L Ed 2d 618 (1987). See also *People v. Dennis*, 464 Mich 567, 577–580, 628

10

> NW2d 502 (2001). For example, in *Greer*, there was no *Doyle* violation where the defense counsel immediately objected to a question by the prosecution about defendant's post-arrest, post-*Miranda* silence, and the trial court twice gave a curative instruction to the jury. *Greer*, 483 US at 759, 764–765, 107 S Ct 3102.

*Shafier*, 768 N.W.2d at 310–11.

Petitioner challenges the appellate court's resolution of his claim on two levels. First, he argues that it depends on cases where a cautionary instruction was given to remedy any prejudice and no such instruction was given in his case. And second, he claims the court of appeals' determination ignores the additional prejudicial impact of the prosecution's comments on Petitioner's silence that were presented to the jurors by way of the testimony of the victim's mother.

### 1. No cautionary instruction

Petitioner contends that the court of appeals relied on authority that depended upon the giving of a cautionary instruction where no such instruction was given in his case. Put differently, Petitioner claims that it was wrong of the court of appeals to deny him relief based on authority where the defendant got the benefit of a cautionary instruction because Petitioner did not get the benefit of a cautionary instruction. The court of appeals cited three state court opinions in its analysis of this issue: *Shafier*, *People v. Ortiz-Kehoe*, 603 N.W.2d 802 (Mich. Ct. App. 1999); and *People v. Haywood*, 530 N.W.2d 497 (1995). *Shafier* was a case that involved comments regarding post-arrest, post-*Miranda* silence. *Haywood* and *Ortiz-Kehoe*, however, were cases that involved some other type of improper testimony. *Haywood* involved unsolicited testimony implying that the defendant may have previously given the murder victim a black eye. *Ortiz-Kehoe* involved an improper reference to a polygraph examination.

Neither *Shafier* nor *Haywood* involved giving a cautionary instruction. *Ortiz-Kehoe* involved a cautionary instruction, but the court did not conclude that the instruction augured

11

against declaring a mistrial, but in favor of it. *Ortiz-Kehoe*, 603 N.W.2d 802, 806 (Mich. Ct. App. 1999) ("Defendant did object and receive a cautionary instruction, a fact that weighs in favor of granting a mistrial."). Petitioner's contention, therefore, is simply wrong.

Petitioner's challenge simply could not arise from the authority cited by the Michigan Court of Appeals in Petitioner's case, but it could arise from the authority cited in *Shafier*. The *Shafier* court mentioned *Greer v. Miller*, 483 U.S. 756 (1987). In *Greer*, the Supreme Court concluded that a single reference to a defendant's post-arrest, post-*Miranda* silence was so minimal that "silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference" particularly where defense counsel immediately objected to the question and the trial court twice gave a curative instruction to the jury. *Greer*, 483 U.S. at 764–65.

The *Greer* holding involved a cautionary instruction and, therefore, can be distinguished from Petitioner's case. But Petitioner's appellate panel did not rely on or even mention *Greer*. Moreover, *Greer* had no impact on Petitioner's case because the trial court and the court of appeals determined that there was not even a single reference to Petitioner's post-arrest, post-*Miranda* silence. That factual determination is presumed correct. Petitioner has provided no evidence, much less clear and convincing evidence, to overcome the presumption. In fact, based on the information and argument Petitioner has provided, the state courts' determinations that there were no references to Petitioner's post-arrest, post-*Miranda* silence are eminently reasonable.

Accordingly, Petitioner's arguments that it is unfair to rely on authority that involves cautionary instructions when no such instructions were given in his case, are entirely

12

misdirected. Petitioner has failed to demonstrate that the court of appeals' rejection of his *Doyle* claim is contrary to, or an unreasonable application of, clearly established federal law.

### 2. Testimony of the victim's mother

Perhaps recognizing that the detective's statement, standing alone, does not implicate the protections of *Doyle*, Petitioner next invites the Court to consider the detective's statement regarding the instruction to interview Petitioner in combination with the victim's mother's testimony and the prosecutor's arguments regarding the mother's testimony. The court of appeals noted that the victim's mother testified that she had asked Petitioner if he had touched her daughter. The mother explained that Petitioner did not deny it and responded defensively. She testified that she interpreted his response as an indication "that he did it." (Mich. Ct. App. Op., ECF No. 1-5, PageID.29–30; Pet., ECF No. 1-3, PageID.22.)

It appears that the mother posed the question to Petitioner and he responded before his arrest and before he was given *Miranda* warnings and before he invoked the privilege. In that circumstance "no governmental action induced the defendant to remain silent before his arrest." *Fletcher v. Weir*, 455 U.S. 603, 606 (1982); *see also Salinas v. Texas*, 570 U.S. 178 (2013); *Abby v. Howe*, 742 F.3d 221 (6th Cir. 2014). Thus, Petitioner has failed to show that the state court's acceptance of the victim's mother's testimony and the prosecutor's references to it are contrary to, or an unreasonable application of, clearly established federal law.

### B. Sentencing claims

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).

13

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Nonetheless, it is well established that a court violates due process when it imposes a sentence based upon materially false information. *United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 740 (1948) (citation omitted). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

Petitioner makes passing reference to such a claim when he states his habeas sentencing challenge: "The trial court violated Petitioner's due process right to be sentenced based on accurate information . . . ." (Pet., ECF No. 1-4, PageID.25.) Petitioner, however, quickly veers away from the limited confines of habeas cognizability when he articulates his argument. He does not identify a single fact upon which the trial court relied that was materially false or inaccurate. Thus, he has not supported, with facts or argument, the due process claim he hints at when he identifies his habeas issues. Instead, Petitioner argues that the court's conclusions—the judge's actual applications of the guidelines—are inaccurate.

The argument that the trial court erred when it applied the guidelines or that the court of appeals erred when it affirmed the trial court's application, does not state a federal constitutional claim. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). Thus, this Court is bound by the state appellate court's determination that the offense variables are properly scored under state law.

As another alternative, Petitioner contends that he is entitled to resentencing because the prosecutor's proof with regard to the variables was insufficient, that the prosecutor failed to establish the underlying facts by a preponderance of the evidence. Whether or not the evidence preponderated or was "sufficient" to demonstrate Petitioner's sadistic or predatory conduct is not a constitutional issue.

The Sixth Circuit described the scope of constitutional protection at sentencing as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial." *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc). "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. 241, 246 (1949). That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant— if not essential—to [the judge's] selection of an appropriate sentence." *Id*. at 247. An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to

facilitate leniency as to impede it," *United States v. Graham-Wright*, 715 F.3d 598, 601 (6th Cir. 2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir.2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016). In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[1] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ." *Id*. at 92 n.8.[2]

In *United States v. Watts*, 519 U.S. 148, 156 (1997), the Supreme Court noted that proof by a preponderance of the evidence at sentencing would satisfy due process, but the Court did not say that due process requires it. Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required. Thus, *Watts* was not an attempt to establish the bottom limit of constitutional propriety, it merely held

---

[1] *McMillan* was overruled in *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Haymond*, 139 S.Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . ."). The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt. The underlying premise from *McMillan* quoted above— that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions. None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[2] Even the term "burden of proof" can be misleading. As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence." *Id*. at 695 n. 20. Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt." There are times, however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses. It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[3]

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the constitution. Therefore, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review. Petitioner's challenges to the state court's offense variable scoring, and the resulting sentence, fail to show that his sentence is contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

---

[3] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the due process clause, but because anything lower than "more likely than not" is not really persuasive at all.

claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  April 22, 2021                               /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge